UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MYSPINE PS, | CASE NO. C12-1926 MJP |
| Plaintiff, | ORDER GRANTING MOTION TO REMAND |
| v. | |
| ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, | |
| Defendant. | |

THIS MATTER comes before the Court on Plaintiff's motion to remand. (Dkt. No. 15.) The Court has considered the motion, the response (Dkt. No. 18), the reply (Dkt. No. 20) and all related documents. Based on this review, the Court GRANTS the motion and REMANDS this case back to the Superior Court of the State of Washington.

**Background**

Plaintiffs filed this lawsuit in October 2012 in the Superior Court of the State of Washington. (Dkt. No. 1 at 1.) Plaintiffs are health care providers in Washington who provided

ORDER GRANTING MOTION TO REMAND- 1

service to Defendants' insureds between October 1, 2008 and June 1, 2011. (Id.) Plaintiffs claim they billed Defendants for services provided to their personal injury protection (PIP) insureds but were paid less than they were owed due to Defendant's use of a billing practice labeled a "Code 41" reduction. Plaintiffs allege this reduction was the label for the improper use of a system known as the Mitchell system, and a database known as Ingenix,  to reduce or deny medical expense claims payments to the 85th percentile of charges of health care providers in the same geographic region. (Id. at 2.) According to Plaintiffs, Defendants had no reasonable basis for using the 85th percentile and paying less than the providers charged, and did not determine whether the providers' bills were unreasonable before refusing or reducing the payment. (Id.)

Plaintiffs seek actual damages, statutory damages, and declaratory and injunctive relief. They bring their suit for declaratory judgment, violations of the Washington Consumer Protection Act, RCW 18.86, et seq., unjust enrichment and breach of contract (Compl. at 48- 65.) They plead for damages in an amount to be determined at trial, "but which is substantially less than $5,000,000." (Compl. at ¶7.1.) Defendants removed the case to federal court on November 1, 2012 under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d) on grounds they can demonstrate damages actually exceed the 5 million dollar CAFA amount in controversy requirement. Plaintiffs now seek to have the case remanded back to state court.

## Discussion/Analysis

A. Standard for Assessing Amount in Controversy

The Class Action Fairness Act vests district courts with "original jurisdiction of any civil action in which, inter alia, the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and where the aggregate number of proposed plaintiffs is 100 or greater with minimal diversity. The 9th Circuit has repeatedly held the jurisdictional grant in

ORDER GRANTING MOTION TO REMAND- 2

CAFA does not alter the well established role of federal courts as courts of limited jurisdiction, where the burden of removal rests on the removing defendant. Abrego v. Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2007).

Plaintiffs argue in their motion to remand that Defendants cannot show to a "legal certainty" that damages are over 5 million such that CAFA would provide federal jurisdiction in this case, citing Lowdermilk v. U.S. Bank National Ass'n, 479 F.3d 994 (9th Cir. 2007) for the standard. (Dkt. No. 15 at 13.) Defendants argue the legal certainty standard of Lowdermilk does not apply here because damages have not been clearly plead by Plaintiffs. (Dkt. No. 18 at 2.) Instead Defendants argue a preponderance of the evidence standard applies, citing Lewis v. Verizon Communications, Inc., 627 F.3d 395, 397 (9th Cir. 2010).

Lowdermilk clearly lays out the scenarios and standards that arise in determining whether amount in controversy requirements of CAFA are met for the purposes of removal.  When a plaintiff fails to plead a specific amount of damages, the defendant seeking removal must show by a preponderance of the evidence that the amount in controversy requirement of CAFA has been met. 479 F.3d at 998. Alternatively, if a plaintiff's complaint alleges less than the jurisdictional amount, a party seeking removal must prove with legal certainty that the CAFA amount in controversy requirement is met. Id. at 999. "Where the plaintiff has alleged her facts and pled her damages, and there is no evidence of bad faith, the defendant must not only contradict the plaintiff's own assessment of damages, but must overcome the presumption against federal jurisdiction." Id.  This standard "guard[s] the presumption against federal jurisdiction and preserve[s] the plaintiff's prerogative . . . to forego a potentially larger recovery to remain in state court." Id.

In Lewis v. Verizon, plaintiff sought damages for "unauthorized billings" with no specific amount attached. 627 F.3d at 396. Defendant Verizon put forth an affidavit in support of removal demonstrating the sums plaintiff was asking for exceeded 5 million dollars, and the plaintiff made no attempt to demonstrate or argue otherwise.  Id. at 400. This is not the case here. Plaintiffs argue that Defendants misconstrue their pleadings, and that Defendant's calculations of sought damages encompass more than what Plaintiff is asking for. (Dkt. No. 20 at 4.)

Defendants argue Plaintiffs only equivocally state "there is no reasonable basis to believe that … damages exceed $5,000,000" and this is not sufficient to allege damages less than the jurisdictional amount. (Compl. at ¶ 7.4.) However, under the section of the compliant labeled "Damages" Plaintiffs state they seek "damages in amount that will be established at trial, but which amount is substantially less than $5,000,000." (Compl. at 70, ¶ 7.2) And unlike in Lewis, Plaintiffs argue in their motion to remand and their reply that the calculations of their damages presented by the Defendant are inaccurate, and their claimed damages fall far below the 5 million dollar floor. Because the Plaintiffs are master of their complaint, and because of the presumption against jurisdiction in federal courts that survives CAFA, the Court will not read the Plaintiff's language to lower the burden for the Defendant. The legal certainty standard applies, and Defendants must prove to a legal certainty that Plaintiff actually alleges over 5 million in damages.

B.  Calculating Damages

The amount in controversy can include both attorneys' fees and treble damages, in addition to compensatory damages. Attorneys' fees can be included in the amount in controversy if they are provided for by statute. Lowdermilk, 479 F.3d at 1000. The CPA provides for attorneys' fees. Treble damages may be included in the calculation of the amount in controversy where they are

provided for by statute. <u>Kerbs v. Safeco Ins. Co. of Ill</u>., 2011 U.S. Dist. LEXIS 138318 at *7 (W.D. Wash. 2011.) The CPA also provides for treble damages. Further, where injunctive relief is being sought, the "value" of injunctive relief, determined by calculating the defendant's costs of compliance, is properly included in the damages calculation for CAFA removal. <u>Rodgers v. Cent. Locating Serv</u>., 412 F. Supp. 2d 1171, 1179 (W.D. Wash. 2006).

The sticking point in the calculation of damages is a dispute as to whether Plaintiffs seek code 41 damages and injunctions from use of the FAIR Health database or only the Ingenix database.  The FAIR Health database (FAIR) is the system that replaced Ingenix and is currently in use, which also contains a reduction known as code 41. Defendants allege the complaint seeks FAIR based damages because the complaint says Defendant violated the law by using the "Ingenix or other database" to make improper code 41 reductions (Compl. at ¶ 6.2), and uses a class certification definition that includes code 41 reductions without specifying the database used. (<u>Id</u>. at ¶ 5.2.) What Defendants fail to mention is the class certification definition also specifies it seeks damages for harms occurring between October 1, 2008 and June 1, 2011. (<u>Id</u>.) The FAIR database was not implemented until June 2, 2011. (Dkt. No. 15 at 7.) Further, the bulk of the complaint refers exclusively to Ingenix. (see, Compl. at 49.) For example, the complaint discusses specific flaws that have been found with the Ingenix database. (Compl. at 17.) This indicates, as Plaintiffs argue, that the case was tailored to seek only remedies based on the code 41 use in the Ingenix database.

Defendant's calculations for removal rely heavily on the FAIR database being included in the damages. The affidavit of Barbara Norton supporting removal alleges the actual damages from Ingenix reductions are estimated at $823,493. (Dkt. No. 1-1 at 4.) The future costs caused by the injunction, however, Norton estimates at $3,198,860. (<u>Id</u>.) This would bring the complaint within

the CAFA minimum controversy requirements. Plaintiffs argue Defendant's costs related to the injunction are zero, because they have ceased using Ingenix and instead use FAIR. Plaintiffs will not be able to have it both ways. If injunctive relief costs are not part of the equation for removal, it will be law of the case that any injunction issued will only bar the future use of Ingenix code 41 reductions, not FAIR code 41 reductions. Because it does appear only Ingenix reductions are at issue in the complaint, only the cost of stopping any continuing Ingenix code 41 reductions will be considered in the costs of injunctive relief. The Defendants have not argued that compliance with injunctive relief, if only the Ingenix reductions are at stake, brings the complaint within the jurisdictional requirement of CAFA. Defendants have not shown to a legal certainty the total damages meet the CAFA amount in controversy requirement for removal.

### Conclusion

As masters of their complaint, and with the presumption against federal jurisdiction, the Plaintiffs plead damages below 5 million. Without the $3,198,860 Defendants allege as cost of compliance damages, the amount in controversy does not meet the 5 million dollar CAFA minimum for removal. Defendants have not met their burden of proving otherwise. This case is REMANDED back to the state court.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 25th day of January, 2013.

Marsha J. Pechman
Chief United States District Judge

ORDER GRANTING MOTION TO REMAND- 6